# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CATHLEEN MILLER, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner )<br>of the Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 1:12-CV-250-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Cathleen Miller on July 20, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 26], filed by Plaintiff on April 5, 2013. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 12, 2013, the Commissioner filed a response, and on October 21, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 1, 2004, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on September 2, 2003. Plaintiff's application was denied initially and upon reconsideration. Following a hearing, Administrative Law Judge ("ALJ") Bryan J. Bernstein concluded that Plaintiff was not disabled. The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for a new hearing and new decision. On January 21, 2011, ALJ Bernstein held a hearing at which Plaintiff, with a non-attorney representative, Plaintiff's husband, and a vocational expert ("VE") testified. On December 3, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.  The claimant met the insured status requirements of the Social Security Act through June 30, 2008.

2.  The claimant has not engaged in substantial gainful activity from her alleged onset date of September 2, 2003, through her date last insured of June 30, 2008. (20 CFR 404.1571 *et seq*.).

3.  The claimant had severe impairments (20 CFR 404.1250(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  Through the date last insured, the claimant had the residual functional capacity to perform a limited range of work, with a sit/stand option, no prolonged standing or walking, or standing or walking for more than fifty percent of an eight hour workday, and she could not reach extreme postures more than occasionally. The claimant could not lift or carry more than 20 pounds occasionally or 10 pounds frequently, could not engage in work demanding constant manipulation with hands or fingers, cannot work in atmospheric concentrations less comfortable than ordinary retail or commercial environments, and could not undertake work in hazardous conditions, including unprotected heights or around vehicles moving in close quarters. In addition, the claimant could not perform work that imposes close regimentation of production.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was 35 years old, defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, from September 2, 2003, the alleged onset date, through June 30, 2008, the date last insured (20 CFR 404.1520(g)).

On April 10, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

**A. Background**

Plaintiff was 31 years old on the date of her alleged disability onset. She had a high school education. She had past work as a nurse's aide, home health aide, qualified medication assistant, and teacher's assistant at a daycare center.

**B. Medical and Mental Health Evidence**

Plaintiff has a history of bipolar disorder. She also has received treatment for psoriatic arthritis, congenital heart disease, high blood pressure, Type 2 diabetes mellitus, fibromyalgia, obesity, and headaches, among other complaints.

On May 25, 2005, non-examining state agency physician Dr. Wenzler reviewed Plaintiff's file and concluded that she could occasionally lift twenty pounds, frequently lift ten pounds, and sit, stand or walk about six hours in an eight hour work day. Her bilateral fine

fingering is limited to occasionally. He concluded that Plaintiff's allegations were fully credible because they were reasonably well-supported by appropriate medical findings. On February 17, 2006, state agency physician Dr. Sands reviewed and affirmed Dr. Wenzler's report.

On August 26, 2010, Dr. B.T. Onamusi performed a physical exam at the request of the agency. Plaintiff was sixty-two inches tall and weight 219 pounds. She waked with a mild antalgic gait, appeared to be mildly unsteady, and had mild difficulty transferring on and off of the examination table. Dr. Onamusi's diagnosis was psoratic arthropathy; coronary artery disease; seasonal bronchial asthma; diabetes mellitus, poorly controlled with neuropathic symptoms. He opined that Plaintiff was only capable of engaging in sedentary activity as defined in the Dictionary of Occupational Titles. Dr. Onamusi advised that Plaintiff would be able to lift and carry up to ten pounds only occasionally. He found that, in an eight-hour work day, Plaintiff could sit for an hour, stand for thirty minutes, and walk for twenty minutes at one time without interruption, and during the work day could sit for a total of five hours, stand for two hours, and walk for two hours. He concluded that Plaintiff could only occasionally perform reaching, handing, fingering, and push/pull movements with both hands, and could never be around unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme heat or cold, or vibrations.

Plaintiff received ongoing mental health treatment at the Bowen Center beginning in 2005. In addition to being treated by other care providers, Plaintiff received counseling from Ms. Brumm, a social worker licensed as a mental health counselor. On June 18, 2007, shortly after she saw Plaintiff for an annual assessment, Ms. Brumm completed a Mental Residual Functional Capacity questionnaire. She concluded that Plaintiff's psychological problems would make it impossible for her to work an eight-hour day, but she could work about four hours per

4

day. Ms. Brumm reported that Plaintiff suffered from depression, anxiety, mood disorder, and psychosis, and that she was severely limited in her ability to deal with work stress. The record includes reports indicating that Ms. Brumm continued to provide counseling services to Plaintiff at least through 2010.

Another social worker, Ms. Brunson, also provided individual therapy for Plaintiff beginning in March, 2010. On January 14, 2011, Ms. Brunson completed a Mental Health Source Document. It indicated that Plaintiff would likely miss work more than three times per month because of her mental impairments, that she was severely limited in her ability to deal with work stress, was constantly limited in her ability to handle work demands, persistence, and expectations, and frequently limited in her ability to complete work tasks in a timely manner. She also noted that Plaintiff experienced periods when her symptoms were more severe than at other times, even if she followed treatment, and that she will need therapeutic support indefinitely.

**C.**     **Vocational Expert Testimony**

At the Administrative Hearing, Robert Barkhaus testified as a neutral vocational expert. The ALJ presented a hypothetical scenario that reflected Plaintiff's RFC. In response, the VE testified that there was work available to a person with those limitations in the regional economy.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has

applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant]

meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations?

If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ made two main errors in his opinion: (1) the ALJ improperly evaluated the medical and mental health evidence in the record, including an examining doctor, two non-examining state agency physicians, and Plaintiff's treating mental healthcare professionals, and (2) the ALJ improperly evaluated Plaintiff's credibility. The Court will examine each argument in turn.

8

A.     **Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ did not properly evaluate the opinion of examining physician Dr. Onamusi. Plaintiff argues that the ALJ did not explain the weight given to Dr. Onamusi's opinion and did not explain why he did not adopt Dr. Onamusi's conclusion that Plaintiff is capable of only sedentary work activity. The Commissioner argues that the ALJ did include some of the limitations described by Dr. Onamusi, and argues that he did not need to address Dr. Onamusi's opinion because the examination took place after Plaintiff's insured status expired.

Plaintiff also argues that the RFC was not consistent with the limitations found by the non-examining state agency physicians, particularly the conclusion that Plaintiff could not perform frequent fingering. The ALJ's opinion does not refer to the agency physicians' opinions at all. The Commissioner argues that the ALJ's RFC finding was consistent or more restrictive than the opinions of the agency physicians and need not be disturbed.

The ALJ's duty is to resolve inconsistencies in the evidence. *See* SSR 96-8p. The ALJ must resolve the differences and explain why he accepted one opinion over another. *See Corder v. Massanari*, No. 00 C 2714, 2001 WL 1355986, at *4 (N.D. Ill. Nov. 1, 2001) ("By failing to resolve conflicts in competing opinions . . . the ALJ left his conclusions seeking a factual basis."). When there are inconsistent medical opinions in a claimant's case record, the SSA "will weigh all of the evidence and see whether [it] can decide whether [claimant is] disabled based on the evidence" the SSA has. 20 C.F.R. § 404.1527. The SSA gives "more weight" to medical opinions in which the source provides a better explanation for that opinion, or in which the opinion is more consistent with the record as a whole. *Id.* at §§ 404.1527(d)(3)-(4). In addition, the Code directs ALJs to "give more weight to the opinion of a source who has examined [claimant] than to the opinion of a source who has not." 20 C.F.R. § 404.1527(d)(1); *see also*

*Burton v. Apfel*, No. 97 C 6438, 1999 WL 46902, at *8 (N.D. Ill. Jan. 28, 1999) (finding error in ALJ's failure to afford "great deference" to the opinion of the only examining psychologist).

In this case, the ALJ included a description of Dr. Onamusi's opinion, but did not describe the weight he gave to it or why he did not fully incorporate the limitations Dr. Onamusi found. Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. Although he was not required to agree with Dr. Onamusi, the ALJ failed to explain the weight he gave Dr. Onamusi's opinion or the reason he disregarded Dr. Onamusi's conclusion that Plaintiff would only be capable of sedentary work activity. Indeed, the ALJ failed to explain the weight given to any of the medical opinion evidence in the record. In short, the ALJ failed to draw a logical bridge between the medical evidence he described and his conclusions about Plaintiff's physical RFC.

Plaintiff also argues that the ALJ failed to evaluate the opinion of one Plaintiff's treating mental healthcare professionals and improperly discounted the opinions of another. The Commissioner argues that the ALJ's conclusions are supported by substantial evidence. Ms. Brunson concluded that Plaintiff would miss more than three days of work per month because of her mental impairments, and at the hearing the ALJ conceded that level of absenteeism would preclude competitive employment. Ms. Brumm, another social worker treating Plaintiff's mental health, opined in 2007 that Plaintiff could only sustain part time work.

Neither social worker is an "acceptable medical source" whose opinion would be entitled to controlling weight. 20 CFR §§ 404.1527, 416.927. However, an ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who

are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *Id*. at *4-5, s*ee also Phillips v. Astrue*, 413 Fed. App'x. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."). In this case, the ALJ did not discuss the opinion of any "acceptable medical source" who treated Plaintiff for her mental health issues, and either discounted or did not address the opinions of two of Plaintiff's treating mental health specialists who specifically addressed her ability to work. An ALJ may not simply ignore such an opinion, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 (explaining that ALJ must not ignore treating physician's opinion that plaintiff "could not handle a full-time job").

Both Ms. Brunson and Ms. Brumm specifically opined that Plaintiff would be unable to maintain full-time employment. The ALJ failed to even mention Ms. Brunson's opinion or her treatment notes, despite the requirement that he weigh and evaluate her opinion. The ALJ did lay out his reasons for rejecting the opinion of Ms. Brumm that Plaintiff would be unable to work, explaining that he discounted her opinion because it was based on Plaintiff's functioning while she was not on medication for her mental health; because Ms. Brumm is not a doctor; and on the basis of a treatment note indicating that Plaintiff had showed some improvement between

12

2007 and 2010. Plaintiff argues that each of these grounds for discounting Ms. Brumm's opinion are in error.

As described above, the ALJ was required to apply the same criteria to determine the weight of Ms. Brumm's opinion as he would to an "acceptable medical source." *Phillips*, 413 Fed. App'x. at 884; SSR 06-03p at *4-5. Although she is not a psychologist, as the Agency's rulings explain, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file" because they "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p at *2-3. Although the ALJ is correct that the opinion of a treating psychologist or psychiatrist is generally entitled to greater weight than that of a licensed clinical social worker and therapist, in this case he did not mention the opinion of any "approved medical source" to whom he gave greater weight.

More troubling is the ALJ's determination that Ms. Brumm's notations in her treatment records that Plaintiff demonstrated "slight improvement" over a period of almost four years are sufficient to entirely discount her assessment of Plaintiff's ability to work, particularly given that her assessment is consistent with other assessments in the record, including Ms. Brunson's. *See Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [the claimant] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia."). As with the ALJ in *Scott*, ALJ Bernstein "cherry-picked" from the

13

records to find evidence of improvement, and displayed "an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Id*. *See also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). Likewise, failure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity. As the Seventh Circuit has emphasized, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases).

The ALJ only discussed the opinion of a single mental healthcare provider, but discounted her conclusions based on an apparent misunderstanding of bipolar disorder, completely ignoring other evidence in the record that supported the therapist's conclusions. The ALJ's opinion contains no indication whatsoever of the basis for his assessment of Plaintiff's mental health. Not only did the ALJ fail to properly weigh the opinions of Plaintiff's mental healthcare providers, but he failed to create a logical bridge to his conclusions. *O'Connor-*

14

*Spinner*, 627 F.3d at 618.

On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged impairments and provide a logical bridge from the evidence to his conclusion, including a description of the medical and mental health evidence on which he bases his determination and an explanation of how he weighed the opinions of Plaintiff's treating and examining healthcare providers.

**B.      Credibility**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant

15

or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96–7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96–7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ's credibility determination was based on a misrepresentation or misunderstanding of Plaintiff's testimony. The ALJ concluded that Plaintiff was less than credible because of contradictions between her account of her own limitations and her activities. In particular, he said, "the claimant described herself as predominantly in bed and sleeping. Notwithstanding this, her testimony acknowledged, and other evidence shows" daily activities that go beyond resting in bed. AR 24. Plaintiff argues that the ALJ's characterization of Plaintiff's testimony is inaccurate, and that Plaintiff instead testified that she naps or lays down for only about three to three and a half hours per day.

At the hearing, Plaintiff testified that she naps for about two hours in the morning and lays down for about an hour to an hour and a half in the afternoon. The Court is concerned by the ALJ's characterization of three to three and a half hours of napping as spending the day "predominantly in bed," suggesting that his finding that Plaintiff was less than credible was based on a misunderstanding or inaccurate memory of her testimony. As to her daily activities, Plaintiff testified that she goes grocery shopping with her husband for about an hour once per month, does some cooking but mostly with the use of a slow cooker to avoid having to stand on her feet for long, does a little laundry with the assistance of her husband, and spends four or five

16

hours per week participating in online course work. Such a low level of activity not apparently inconsistent with the need to nap for three hours per day, and certainly does not rise to the level of "significant contradictions" described by the ALJ. Furthermore, to the extent that the ALJ is implying that Plaintiff's daily activities indicate an ability to work, the Court notes that the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of his personal hygiene, children, or household chores with the ability to work. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio*, 630 F.3d at 712; *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006).

Even more troubling is the ALJ's characterization of Plaintiff as non-compliant with medication. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). As Plaintiff argues, the ALJ did not ask Plaintiff about her compliance with medication at the hearing and the credibility section of his opinion does not address the reasons for her noncompliance that appear in the record, including her ability to afford medication, *see, e.g.,* AR 353, and its side effects, *see, e.g.,* AR 695.

17

On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in the Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 26] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of February, 2014.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record